| | |
|---|---|
| 1 | Tammy Hussin (SBN: 155290) |
| 2 | HUSSIN LAW |
|   | 1302 N. Coast Highway 101, Suite 201 |
| 3 | Encinitas, CA 92024 |
| 4 | Tel: (877) 677-5397 |
|   | Fax: (877) 667-1547 |
| 5 | Tammy@HussinLaw.com |

Attorney for Plaintiffs, Natalie Huffman, Steve Huffman, Inna Borboa, Tamara Sams, Guadalupe Quevedo, Mary Russell, Diann Taylor, David Toledo, Mitchell Joelson, Susan Joelson, Genevive Lorenzo Agsalud, Isaac Myers, Jose Raposo, Beverly Raposo, Xchel Osorio, Desire Valdez, and Clinton Rusthoven

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| Natalie Huffman, Steve Huffman, Inna Borboa Badran, Tamara Sams, Guadalupe Quevedo, Mary Russell, Diann Taylor, David Toledo, Mitchell Joelson, Susan Joelson, Genevive Lorenzo Agsalud, Isaac Myers, Jose Raposo, Beverly Raposo, Xchel Osorio, Desire Valdez, and Clinton Rusthoven, <br><br>   Plaintiffs, <br><br> v. <br><br>Midland Credit Management, Inc., a California corporation; and DOES 1-10, inclusive, <br><br>   Defendants. | Case No.: <br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227,** *et seq.* <br><br>**JURY TRIAL DEMANDED** |

For this Complaint, the Plaintiffs, by and through their undersigned counsel, based on information garnered from Plaintiffs and investigations by their counsel, hereby state as follows:

1. This action arises out of repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq.* ("TCPA"), and this court has original jurisdiction of this civil action as one arising under the laws of the United States. 28 U.S.C. §1331; *see*, *Mims v. Arrow Fin. Serv.*, LLC, 565 U.S. 132 S. Ct. 740, 181 L. Ed.2d 881 (2012).

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Plaintiffs all satisfy Article III standing requirements, as all have suffered concrete injury in the form of invasions of privacy from defendant's repeated violations of the TCPA. *Van Patten v. Vertical Fitness Group*, D.C. No.3:12-cv-01614 (9th Cir., 2017).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that Defendant transacts business here and a substantial portion of the acts giving rise to this action occurred here.

## **THE PARTIES**

5. Plaintiff, Inna Borboa Badran f/k/a Inna Borboa (hereafter, "Borboa"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

6. Plaintiff, Tamara Sams (hereafter, "Sams"), is an adult individual residing in Ontario, California, and is a "person," as defined by 47 U.S.C. §153(39).

7. Steve and Natalie Huffman (hereafter, "Huffmans"), are adult individuals residing in Bakersfield, California, and they are each a "person," as defined by 47 U.S.C. §153(39).

8. Plaintiff, Guadalupe Quevedo (hereafter, "Quevedo"), is an adult individual residing in Visalia, California, and is a "person," as defined by 47 U.S.C. §153(39).

9. Plaintiff, Mary Russell (hereafter, "Russell"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

10. Plaintiff, Diann Taylor (hereafter, "Taylor"), is an adult individual residing in Herriman, Utah, and is a "person" as defined by 47 U.S.C. §153(39).

11. Plaintiff, David Toledo (hereafter, "Toledo"), is an adult individual residing in Modesto, California, and is a "person," as defined by 47 U.S.C. §153(39).

12. Mitchell and Susan Joelson (hereafter, "Joelsons"), are adult individuals residing in Irvine, California, and they are each a "person," as defined by 47 U.S.C. §153(39).

13. Plaintiff, Genevive Lorenzo Agsalud (hereafter, "Agsalud"), is an adult individual residing in Los Angeles, California and is a "person," as defined by 47 U.S.C. §153(39).

14. Plaintiff, Isaac Myers (hereafter, "Myers"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

15. Jose and Beverly Raposo (hereafter, "Raposos"), are adult individuals residing in Artesia, California, and they are each a "person," as defined by 47 U.S.C. §153(39).

16. Plaintiff, Xchel Osorio (hereafter, "Osorio"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

17. Plaintiff, Desire Valdez (hereafter, "Valdez"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. 153(39).

18. Plaintiff, Clinton Rusthoven (hereafter, "Rusthoven"), is an adult individual residing in Butte, Montana, and is a "person," as defined by 47 U.S.C. §153(39).

19. Defendant, Midland Credit Management, Inc. (hereafter, "MCM"), is a California corporation, located in San Diego, California, and operates regularly collecting consumer debts in this Judicial District and throughout the state of California.

20. Does 1-10 (the "Collectors") are individual collectors employed by MCM and whose identities are currently unknown to the Plaintiffs. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

21. MCM at all times acted by through one or more of the collectors.

## BACKGROUND

22. MCM is one of the largest debt buyers in the nation, and is notorious for abusing consumers while ignoring state and federal consumer protection laws.

23. In fact, in 2015, the Consumer Finance Protection Bureau ("CFPB") filed suit against MCM, alleging a widespread practice of unfair, deceptive, and abusive debt collection activity, including calling consumers at such an excessive rate that consumers paid for disputed debts solely to stop the excessive calls from MCM. MCM ultimately agreed to enter into a Consent Order with the CFPB, requiring MCM to pay $10 million in fines, and pay up to $42 million in consumer refunds. *2015 Consent Order*, 2015-CFPB-0022.

24. Despite the Consent Order, MCM nevertheless continues to ignore the prohibitions of the FDCPA and continues unfair and unlawful debt collection practices. The CFPB received nearly 1,000 consumer complaints since taking action

against MCM, many of whom complain MCM ignored do-not-call directives. *See*, https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp.

25. In addition to those who complain to the government, there are thousands of others who lodge complaints on the internet about being bombarded with automated calls from MCM after requesting that the calls stop. *See, e.g*. http://800notes.com/nb/search?q=midland+credit+management; http://complaintwire.org/~sys~/search/?q=midland+credit+management.

25. While ignoring do-not-call directives and barraging consumers with calls, MCM violates the TCPA by using an automated telephone dialing systems and/or an automated voice when calling consumers on their cellular telephones.

26. MCM's illegal calling campaigns resulted in an enormous exposure to liability, and MCM found itself defending a variety of TCPA class actions, and hundreds on individual TCPA claims.

27. The MCM TCPA class actions were consolidated into a Multidistrict Litigation ("MDL"), and thereafter the hundreds of individual claims were transferred into the MDL. *See, In re: Midland Credit Management Inc. Telephone Consumer Protection Act Litigation*, Case No. 11-MD-2286 MMA-MDD (S.D. CA).

28. The Midland MDL was heavily litigated. After years of unsuccessfully defending the MDL, MCM ultimately MCM agreed to settle the class actions for $15 million.

**MCM AND THE PLAINTIFFS**

29. The MCM TCPA class action settlement identified over 41 million consumers who were called in violation of the TCPA, and Plaintiffs were among those identified as members of the class.

30. Like the other members of the class, Plaintiffs each received automated calls from MCM during the class period of November 2, 2006 and August 31, 2014, as defined in the MCM TCPA class action settlement.

31. Although it was years ago, Plaintiffs each specifically recall being bombarded with unwanted calls from MCM. MCM systematically ignored each of Plaintiffs' do-not-call directives, and barraged them with calls without their consent and over their objections. In fact, there was not a single instance in which MCM honored a do-not-call directive from any of the Plaintiffs.

32. Even after being told to stop calling, MCM typically called Plaintiffs on a daily basis, multiple times a day, for weeks and months on end. The calls began early in the mornings and persisted well into the evening hours. Plaintiffs estimate they sometimes received upwards of fifteen calls from MCM in a single day from Midland.

33. MCM's calls to Plaintiffs were particularly bothersome because they were automated. When Plaintiffs answered the calls, MCM sometimes used an automated voice, and Plaintiffs were forced to wait in silence for an available representative with whom they could speak. Other times Plaintiffs answered calls from MCM, and heard only silence and MCM's telephone system never transferred them to a live representative. Other times still, Plaintiffs answered and MCM's telephone system terminated the call. When Plaintiffs did not answer, MCM sometimes clogged Plaintiffs' voicemail with blank and/or automated messages.

34. MCM added to Plaintiffs' frustration by calling from many different phone numbers, and by blocking the caller identification such that Plaintiffs would not know it was MCM calling. Plaintiffs sometimes blocked MCM's telephone number in an effort to stop the calls, only to find that MCM would start calling them from a different phone number.

35. Plaintiffs were often times met with rude and abusive representatives when they asked that the calls stop. MCM representatives typically openly and

outwardly refused to honor Plaintiffs' do-not-call requests. Representatives sometimes insisted the calls would, and could, continue until such time as the debt was paid. Some representatives terminated the call when told to stop calling; other times representatives ignored the request all together and became loud and aggressive attempting to bully Plaintiffs into making immediate payment.

36. Specifically, in or around 2011 and 2012, Plaintiff, Inna Borboa Badran, began receiving debt collection calls from MCM on her cellular telephone in an attempt to collect a debt. Ms. Badran instructed MCM to cease all communications with her both orally and in writing. MCM nonetheless continued to harass Ms. Badran with automated calls.

37. In or around 2009, Plaintiff, Tamara Sams, began receiving automated calls from MCM on her cellular telephone in an attempt to collect a debt. Ms. Sams directed MCM representatives to stop calling. MCM nonetheless continued to harass Ms. Sams with automated calls.

38. In or around 2012, Plaintiffs, Natalie and Steve Huffman, began receiving automated calls from MCM on their cellular telephones. The Huffmans directed MCM representatives to stop calling. MCM nonetheless continued to harass the Huffmans with automated calls.

39. In or around 2013, Plaintiff, Guadalupe Quevedo began receiving automated calls on her cellular telephone from MCM in an attempt to collect a debt. Ms. Quevedo directed MCM representatives to stop calling. MCM nonetheless continued to harass the Huffmans with automated calls.

40. In or around 2013, Plaintiff, Mary Russell, began receiving automated calls from MCM on her cellular telephone in an attempt to collect a debt. Ms. Russell directed MCM to stop calling. MCM nonetheless continued to harass Ms. Russell with automated calls.

41. In or around 2013, Plaintiff, Diann Taylor, began receiving automated calls from MCM in an attempt to collect a debt. Ms. Taylor directed MCM to stop calling. MCM nonetheless continued to harass Ms. Taylor with automated calls.

42. In or around 2012, Plaintiff, David Toledo, began receiving automated calls from MCM in an attempt to collect a debt. Mr. Toledo directed MCM representatives to stop calling. MCM nonetheless continued to harass Mr. Toledo with automated calls.

43. In or around 2012, Plaintiffs, Susan and Michael Joelson began receiving automated calls from MCM in an attempt to collect a debt. The Joelsons directed MCM representatives to stop calling. MCM nonetheless continued to harass the Joelsons with automated calls.

44. In or around 2012, Plaintiff, Genevive Agsalud, began recieiving automated calls on her cellular telephone from MCM in an attempt to collect a debt. Ms. Agsalud told MCM representatives to stop calling. MCM nonetheless continued to harass Ms. Agsalud with automated calls.

45. In or around 2012, Plaintiff, Isaac Myers began receiving automated calls on his cellular telephone from MCM in an attempt to collect a debt. Mr. Myers told MCM representatives to stop calling. MCM nonetheless continued to harass Mr. Myers with automated calls.

46. In or around 2012, Plaintiffs, Jose and Beverly Raposo, began receiving automated calls from MCM in an attempt to collect a debt. The Raposos told MCM representatives to stop calling. MCM nonetheless continued to harass the Raposos with automated calls.

47. In or around 2012, Plaintiff, Desire Valdez began receiving automated calls from MCM in an attempt to collect a debt. Ms. Valdez told MCM representatives to stop calling. MCM nonetheless continued to harass Ms. Valdez with automated calls.

48. In or around 2012, Plaintiff, Clinton Rusthoven began receiving automated calls from MCM in an attempt to collect a debt. Mr. Rusthoven told MCM representatives to stop calling. MCM nonetheless continued to harass Mr. Rusthoven with automated calls.

49. The calls from MCM intruded on Plaintiffs' right to be free from unwarranted invasions. By ignoring Plaintiffs' demands to stop calling, MCM caused Plaintiffs, and each of them, frustration, aggravation, and distress. The calls from MCM interfered with Plaintiffs' ability to use their cellular telephones in the manner in which they were intended, interrupted important calls, wasted their time, interfered with work days, disrupted them while driving, and disturbed quiet evenings and family time.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227, *ET. SEQ.*

50. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. MCM knowingly and/or willfully called Plaintiffs without their consent and over their objections.

52. Without prior consent, MCM placed calls to Plaintiffs using an automated telephone dialing system and/or an automated or prerecorded voice on their cellular telephones in violation of 47 U.S.C. §227(b)(1)(A)(iii).

53. Insofar as MCM knew it had no consent to call Plaintiffs on their cellular telephones, the calls were made in knowing and/or willful violation of the TCPA. As such, MCM should be subject to treble damages for each call pursuant to 47 U.S.C. §227(b)(3)(C).

54. When MCM called Plaintiffs, its telephone dialing system had the capacity to store randomly or sequentially generated telephone numbers, and randomly or sequentially dialed telephone numbers.

55. MCM's telephone system used an automated voice when it placed calls to Plaintiffs.

56. The calls from MCM to Plaintiffs were not placed for "emergency purposes" as defined by 47 U.S.C. §227(b)(1)(A)(i).

57. Plaintiffs are entitled to damages as a result of MCM's TCPA violations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered against the Defendants:

1. As a result of each call made in negligent violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of $500.00 in statutory damages per call, pursuant to 47 U.S.C. §227(b)(3)(B);

2. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of treble damages in an amount up to $1,500.00 per call, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

3. Such other and further relief as may be just and proper.

DATED: February 24, 2017         TAMMY HUSSIN

By: */s/ Tammy Hussin*
Tammy Hussin, Esq.
Hussin Law
Attorney for Plaintiffs